All right. Thank you, Mr. Swain. Thank you. May it please the Court, good morning. Robert Swain for Petitioner Damone Anderson. We're actually the appellate cross-appellant, but I'm going first in terms of arguing the Sixth Amendment claim, if that's all right. Surely. Your Honor, the Sixth Amendment claim is an unusual set of circumstances where the Petitioner, Mr. Anderson, was completely abandoned by his counsel at the sentencing stage. There's no dispute in the record that this was an open sentencing, free reading, meaning that the defense had the right to argue for any sentence down to dismissal of stripes, to reduction to a misdemeanor. The State has not disputed that. Yet, at the sentencing portion of the hearing, defense counsel not only did not say anything, argue anything, present any mitigating evidence in a case where, after all, it was a petty step with a prior for a fellow who had been in under mental, severe mental illness treatment for the last several months, but the trial attorney actually worked against Mr. Anderson by letting the judge believe that it was a stipulated 25 to light sentence. Well, it comes pretty close to being. I mean, I realize there wasn't a stipulated sentence in the sense that it actually used those words. But the way it all went down is an agreement to the guideline, obviously, or not the guideline, sorry, agreement to the range, 25 years to life, mandatory presumptive sentence. The sentence agreement is referred to four or five times in the body of the agreement. And there is nothing, perhaps most importantly of all, in the record to show that when counsel stood by at the judge's observation of a, in fact, agreed sentence, that that wasn't true in San Bernardino, the way their procedure works. Well, I think the first evidence that's not true is that the ruling of the superior court on the habeas, that's at page 146 and 147 of the excerpt of the record, says that it was open sentencing. Well, no, I understand that it, there wasn't a stipulated sentence. But that's a tiny bit different from saying, you know, that he bailed out altogether just because he didn't say anything. Well, wouldn't it be similar to the case in the Federal sentencing guidelines where someone is looking at, you know, a range, the statutory max of 20 years, and there's numerous guideline adjustments that could apply and don't apply, and a defense attorney just stands back and lets every single imaginable guideline apply, never adjust to any? Yes. Well, let's, let me ask it a different way. The state superior court on habeas says, look, basically, there's no realistic possibility that any judge on this court would have made any strikes, given this defendant's criminal history of armed robbery, and robbery and having a weapon in prison. It just is not a realistic possibility, as the California Supreme Court noted in Furman. So why is that a clearly, why is that an unreasonable application of Federal law? Well, let me get, I'll get to that. It's, remind me, I need to get back to, it's an unreasonable application of chronic because it was a complete breakdown of the adversarial system. Let me ask, let me ask something, if I may. What happened was that they took the plea, and they moved immediately to sentencing. Is that correct? That's correct. And in the plea, they'd worked out some credits for time served and that kind of thing, as though they'd worked out the whole thing in the plea itself. Now, is that a reasonable interpretation of what I'm looking at? I don't think it is a reasonable interpretation, because the State hasn't taken the position that that's what was worked out. The State, the position we're in now is that both parties agreed that it was open sentencing, that it wasn't worked out, that that was the maximum. He was advised of the maximum of 25 to life, the same way any defendant has a right to be advised of the statutory maximum. But that doesn't mean that it's worked out that he's agreeing to 25 to life. That's simply the maximum. And so, no, it wasn't agreed that he was going to get 25 to life. The State is not taking the position that he agrees it was 25 to life. Both parties are in agreement that it was open sentencing. And in light of the open sentencing, that the defense attorney did absolutely nothing. Now, to get to Judge Ronda's question, the idea that there was no prejudice, apart from the fact that, you know, our position is it was a complete breakdown of the adversarial system, and it's per se prejudice under chronic. But even under the second prong of Strickland, the Superior Court habeas judges ruling is fatally flawed, apart from the fact that it says it denies the motion to withdraw the plea, which wasn't before the Court, but it misstates the standard in Strickland on the prejudice. It says that we did not prove that it would have been different. It doesn't the proper standard, and of course, that makes it contrary to Strickland, is whether there's a reasonable probability. Well, he says in effect there's no realistic possibility that anybody would have made any strikes. I don't know how much stronger you can get than that. Well, I would argue that that statement is objectively unreasonable in the context of what the judge said. But he's applying California law. See, that's the problem. We can't consider whether he may have been right or wrong under his read of Williams or Furman or whatever. But that's not a matter cognizable in Federal habeas. So that's a conclusion that he reaches, having been doing these things daily, that nobody is going to make any of these strikes. Well, I think that's objectively unreasonable in terms of the standard, because the standard is that we have to show a reasonable probability of a different outcome. We had an expert witness declaration in the file that says that these mitigating factors, the mental illness, the minor nature of the offense, the petty offense, the lack of violence, are factors that would make it reasonably possible for a judge to grant some relief. And, you know, also the sentencing judge, the original sentencing judge, did not have this mitigating evidence in front of him, because it was different judges who heard the competency hearings that preceded this plea and sentencing. And so, and of course, that presupposed, even getting to that presupposes that this wasn't a complete abandonment. And the State really has never addressed head-on how is it possible that it's open sentencing, yet the defense attorney does not make any argument for mitigation, and on top of that, stands silent when the judge mistakenly invokes the claim that this is a plea agreement to 25 to life. And so he had effectively, he was by himself, an illiterate man with mental problems. He was certified in competence back in January of 1998 with the final report that's in the record saying things should move quickly because he's somewhat unstable. It wasn't until September 1st of that year that we have this hearing where he's guilty and is completely abandoned by counsel when, I mean, there's no question that the judge operated under a wide degree of discretion. There's no debate that he could have stricken a strike or moved to reduce. And it really goes to the integrity of the system when someone with so little resources is placed in this position with no counsel advocating for him. If I may, I'd like to reserve my time. Oh, sure. Thank you. Ms. McGinnis? Do I just press? It starts automatically. Sorry? The timer. Do I press something or? No, you just go. May it please the Court. Lynn McGinnis, Deputy Attorney General for the people of the State of California. Well, first of all, as to our portion of the appeal, we would submit on the briefs unless the Court has any questions. I'm not going to spend a lot of time on that. What we're looking at here and a lot of when we look at the briefs of the petitioner and the appellant in this case, what we're looking at is a brief or an argument that may be raised in the first instance to a state trial court or a state appellate court. All we're looking at here is, number one, whether the superior court was unreasonable or arbitrary in assuming that chronic did not apply and that Strickland did, and that, number two, that there was no prejudice under Strickland. Now, in the district court's opinion, the district court pointed out that the case law from the United States Supreme Court was not entirely clear as to whether chronic or Strickland would apply. If I were here arguing a direct appeal, I would argue vigorously for Strickland. But once the district court and the superior court conclude that it's up in the air, that ends the inquiry as far as this Court's concerned because under the ADEPA, the superior court's determination that Strickland applied was not arbitrary to or contrary to the United States Supreme Court precedent. So unless the Court wants me to address whether it's chronic versus Strickland, that would be the people's argument on that, that there's no unreasonable application as far as that first prong would be concerned. On the second prong, we would argue there's also no unreasonable application of United States Supreme Court precedent. The rule under United States Supreme Court precedent is that the counsel has to entirely abandon the client. What we have here is a defense counsel who negotiated a deal. Maybe in hindsight, Mr. Anderson wishes he hadn't taken such a silly deal, but he negotiated a deal of a maximum sentence of 25 years to life, a concurrent parole violation instead of a consecutive parole violation, 26 years to life, and less credits. That was the deal that he made. When he was in front of the ---- Sotomayor, are we sure that that was the deal? Well, that's in the plea agreement. The signed plea agreement says in exchange for dismissing the one-year prison enhancement, in exchange for not objecting to a CPC on appeal to the State courts, in exchange for a concurrent parole violation and in exchange for X number of days of credit, defendant will plead guilty. Now, we're not arguing ---- See, where I get confused and where his argument is confusing is that on the one hand, he's arguing that defense counsel stipulated to 25 years to life, and he never should have done that because that's a bad deal. If that's what he's arguing, then his recourse was to go through the State courts on a motion to withdraw the plea on the basis that counsel didn't give him good representation. If he did not stipulate to it, which is the people's position, he understood what the range was and that that was a probable sentence. He could have filed a motion or not. A lot of plea agreements like this will state that a Romero motion is going to be filed and not opposed or filed and is opposed or whatever. If counsel's position is that he ---- there was an open plea agreement, then you get back to the superior court knew it was an open plea agreement and the superior court is the one with discretion under California law or the prosecutor to dismiss strikes, as it aside, there's really no such thing as a Romero motion. I mean, at least one California appellate court has said defense doesn't even have a right to make a Romero motion, and the court has no duty to even listen to one. If the court understood it's an open plea agreement, then the court also understood its discretion to reduce the offense or to dismiss the strike, and the counsel did not mislead the court. So we either have one or the other, and in either case, it fails. But again, under the ADEPA, what we're looking at here is whether the superior court unreasonably applied Strickland on the prejudice prong. What he's arguing is that if we got a different judge in the San Bernardino County Superior Court, maybe if there was a vigorous advocate advocating for that, he would have gotten a two-strike sentence. We have a judge, and you're not looking from judge to judge to judge. We're looking at the San Bernardino Superior Court. And we have a judge that heard a writ on the merits and said under People v. Williams, which is State law, it would be an abuse of discretion to strike the strike, and this court, i.e., the San Bernardino Superior Court, would not have dismissed the strike. Not only do you have no reasonable probability of a more favorable outcome, you have a no possibility of a favorable outcome. So what's going to happen here is that essentially it's going to ‑‑ if this is remanded for a new sentencing hearing or whatever, it's going to be giving Mr. Anderson a second chance to undo what he decided was a bad deal, because he's then going to go to the San Diego County Superior Court, ask the court to dismiss the strike, and point to all these mitigating factors. The court's going to decline to dismiss the strike, saying you don't meet the criteria under Williams to dismiss. He's going to file another appeal, and it's in essence going to be a second bite at the apple. And that's not ‑‑ that's what the ADEPA is all about is avoiding things like this where defendants simply get to undo bad deals. The last thing that people would want to point out on the chronic versus Strickland, one thing that's very important in applying chronic ADEPA aside is that these chronic cases all go on the theory, even though it's not expressly stated in the case, that the representation was so absent that we have no idea what would have happened if counsel had done A, B, or C. Therefore, we are going to presume prejudice. Here we have every idea what would have happened. The court would have denied the Romero motion. The declaration of the expert was properly presented to the San Bernardino County Superior Court. The San Bernardino County Superior Court considered it, listed contrary to its briefs, all four issues in there, saying even with all this, here's the defendant's history, we would not dismiss a strike under these circumstances. That's all the district court and this court would be looking at. And once the superior court says, no, we would never dismiss a strike for this defendant, the declaration of the expert becomes irrelevant. And with that, unless the court has any questions, the people would submit. Kagan. Thank you, counsel. Mr. Twain. Thank you. What the State misapprehends is the plea agreement was, in effect, giving the maximum sentence. It would be like in any Federal case. The maximum sentence a surrogate pleading for is 20 years. That doesn't mean the attorney can then step aside and do absolutely nothing and not only do nothing, but lead the sentencing court to believe that the defense is in agreement with the maximum sentence. Because that's what happened. It's not a confusing thing. It was an open sentencing, meaning that the maximum was 25 to life. It's the same way if there's multiple counts, you might negotiate the dismiss, three counts and plead the one count, one bank robbery, maximum 20 years. It doesn't mean the defendant is stipulating to the 20-year maximum and that then the defense attorney has no obligation whatsoever to advocate on behalf of the defendant and not only not advocate on behalf of the defendant, but to tell the judge when the judge says, Well, I think 20 years, that's, you know, in the plea agreement, he's agreeing to 20. The DA doesn't object to 20. And there's, you know, 15 or 20 reasons why the defense should argue for a lesser sentence. It was worse than having no attorney. And it's the integrity of the system. And the state counsel says, well, you know, it might end up the same way. Well, we don't believe it would end up the same way. We believe we've shown prejudice. But there is something about the integrity of the system of having an advocate who speaks for you. And it's essential to our adversarial system. And it was a complete breakdown here. And it mandates the use of chronic. And the failure to use chronic was contrary to Supreme Court law. It's clear. It's been reaffirmed numerous times. And this decision was contrary to it. Thank you. Thank you, Mr. Swain. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Graber